This afternoon, we may or may not take a break in the middle, but we won't break for very long if we do. Our first case is United States of America v. Andres Samano-Bahena. I think that's off. Pardon? They settled that one. I think it's the next one. Oh, I'm sorry. That one was settled. I'm sorry. Harris County, Texas, et al. v. MERSCORP I think we got it. Ms. Nichols? Yes, Your Honor. May it please the Court, my name is Barbara Nichols, and I represent Duke-Helen, Dallas County. I will spend my allotted time today addressing Dallas County's Chapter 12 claim under the Texas Civil Practice and Remedies Code. But at the outset, I want to make it clear to this Court what this case is not about. This case is not about MERS's authority to act as a nominee of the beneficiary for purposes of foreclosure under Chapter 51 of the Texas Property Code. Further, the cases wherein MERS has been acknowledged as a beneficiary of the nominee under Chapter 51 are wholly inapplicable to the facts of the case. Under the Texas Record and Statutes, Chapter 11 and 12 of the Property Code, and 193 of the Texas Local Government Code dealing with indexing, those statutes have never recognized or have never incorporated a book entry system, which makes sense, because the authority granted under Chapter 51 is an authority of an agency allowing MERS to act as a book entry system based upon the contract between the borrower and the lender. The purpose of the Record and Statutes, however, is to put the public and creditors on notice as to interests and encumbrances in real property. MERS has no say. Is that purpose written somewhere? You said that's the purpose of it. Is that someplace in a statute that tells us what the purpose of it is? I'm not aware of the statute specifically stating that, but generally, Your Honor, the purpose of the statute is, for example, to put bona fide purchasers on notice and also to create a priority of liens so a creditor who files a lien knows if another lien is ahead of their lien. Based upon that common law and statutory authority under Chapter 13 of the Texas Property Code, which I believe talks about those priorities of interest, that is what the purpose is. It is for the notice to the public as to the interest and the lien in property. Now, MERS has filed documents with the court holding itself out as a lender, as the legal and equitable holder of the promissory note. It has also held itself out as the payee. In addition to that, MERS has also held itself out as the beneficiary of the deed of trust. The deed of trust is a security instrument. The benefit to the security instrument is, in essence, payment of the lien. Under Civil Practices and Remedies Code 12001, a lien is claimed. These points that you make just because your time, with divided time, you have very little. You're not making a 192 mandatory recording argument. Your argument is that you received a false or fraudulent submission. That is absolutely correct, Your Honor. And some of these allegations are blatantly false. The MERS and Bank of America admits that the note stays with the lender. So when MERS makes the representation that it's the payee, that it's the lender, that it's the legal and equitable holder of the promissory note, that is attached. But are you asking us to revisit our decision in Reese, where we did acknowledge that it has a mortgagee's interest? Well, Your Honor, I would propose that may be a good suggestion. And the reason why, Your Honor, is Reese was a pro se plaintiff. And in Reese, if I recall correctly, I believe the court even had issues in determining what allegations were being made. The court in Reese, the difference and the distinction, in fact, between this case and the court in Reese, is that Reese never made allegations that the purpose of the filing was to avoid filing fees. But if there is no mandatory filing, there would be no false statement. The purpose to avoid wouldn't be in any way fraudulent, right? Well, Your Honor, yes. Because when MERS makes, for purposes, this is a 12B6 issue here that we're currently addressing. MERS makes these representations for purposes of avoiding future filings, for purposes of Dallas County's Chapter 12 claims, when all Dallas County has to prove is that MERS made a false or fraudulent claim. And it is false or fraudulent because, as we've just testified, MERS is not the payee, and MERS and Bank of America agree that it's not the holder of the promissory note. In addition to that, it holds itself out as a beneficial interest, which it does not own. You cannot be both the agent and the principal, which is what MERS is purporting. But you could be in a state that doesn't, the split the note theory, if it doesn't exist. That's the Martin's decision, which we've already made that ruling. So I don't see why you wouldn't be able to be both the agent of the lender. Well, Your Honor, it depends upon what interest is being given. The split the note theory basically allows MERS to act in foreclosures to only have the note and not have to, only have the deed of trust and not to have the note. Basically, it's a vehicle by which it could proceed in foreclosure, and it's proceeding as the agent. And you don't dispute that authority? I'm not going to dispute that authority because the question, Your Honor, has there been a, has the obligation been split? The obligation under the deed of trust and the note have not been split. Those interests are still in the lender. All MERS has is an agency. So MERS, as the agent, gets to foreclose under Chapter 51, and it doesn't need the note to do so. But who is the beneficial interest? Who possesses the beneficial interest in the security instrument? Who possesses the note? That's still the lender. Those interests are not MERS's interests. MERS is just an agent, and in the motion to dismiss, when the court asked MERS, what interest does MERS have as a nominee, it was acknowledged that the interest of a nominee is really just an interest of an agent. So that is the only interest MERS has, and MERS is fine to operate under Chapter 51. But what MERS has done, and this gets to Dallas County's Chapter 12 claim, is that MERS has, as alleged in Dallas County's complaint in record from page, I believe, 2300 to 2312, MERS has alleged that it is the lender and beneficiary, and MERS does so so that it can be, number one, indexed as the grantee, and number two, while MERS is in the records holding the place of the actual... I don't think they don't consider themselves the lender. They've held themselves out as the lender. And in the record, what's your authority for that? Your Honor, that is on... In your brief, you cited 2073, which is their advertisement about what they do, but I didn't see it stated there. You have very little time. Of course, the district court said in addition to no false statement, there's no reliance if what you do is just index these things. Well, Your Honor, Chapter 12 does not require reliance, and the court is more than indexing. When MERS makes these statements, MERS is, in essence, holding out that it has these interests so it doesn't have to file subsequent assignments. For Chapter 12 purposes, that's all that's needed. First of all, for the first element of Chapter 12, all Dallas County has to plead is that MERS basically asserts a fraudulent lien or claim in real property, which it does. Assuming that the process isn't correct, where is there authority for the county to bring action instead of referring it to the county attorney to process? The county attorney represents the county and would look into possible prosecution or violations of some sort. Well, Your Honor, Chapter 12 allows the district attorney, the criminal district attorney, and the municipal attorney to bring suit. When a county attorney or district attorney brings suit, it doesn't bring suit in its own name. It's not the district attorney's suit. It will bring suit in the name of the state or in the name of the county. I'm a district attorney. When I bring a suit, I bring the suit in the name of Dallas County. So Chapter 12 specifically authorizes those persons to bring suit. Thank you, Your Honor. Ms. Radnovsky. May it please the Court. Barbara Radnovsky for the appellants. Harris and Brazoria County having settled all actions save the declaratory action, I wish to make an initial overview responsive to one of the comments earlier. The general value of our records in our county record system is dictated by the local government code, including Section 201-002. It declares the records are of value far beyond the issue of notice. This court in Vanderbilt said the same thing, indicating it was of value to insurers, realtors, title companies, local government, purchasers, and landowners. The evidence below included taxing authorities and others upon whom. And you're much more than a librarian. Yes, Your Honor. And the language of 201-002 is soaring in the importance of the preservation of the local records. 201-002 indicates the purpose of the system. It's entitled purpose. And it says recognizing the citizens of the state have a right to expect and the state has an obligation to foster efficient and cost-effective government. And recognizing the central importance of local government records in the lives of all citizens, the legislature finds that the efficient management of local government records is necessary to the effective and economic operation. If it is vital and this area has any ambiguity, couldn't Texas, as is seeming to happen elsewhere, make it a mandatory system itself? I know you claim that's what 192 already does. With all due respect, that is not what my claim is. I'm here having settled all those claims save 192-007. Save 192. You're pushing the 192 argument. Correct. And once the deed of trust, which is optional to file, then the legislature has dictated and given us a directive in very clear, convincing language. But Your Honor is presupposing that the only purpose of records is for securitization purposes. But it's a little hard to follow that the original deed is optional to file, but the assignments thereafter are mandatory? Yes, Your Honor. And let me say that there are five or six legislative directives beyond 192-007. Besides 007, there are several cited by Bank of America and MERS in their briefing to this court. For example, at pages 4 and 6 of page 4 of MERS' brief and page 6 of Bank of America's brief, they indicate beyond the procedural duty of 192-007, which we embrace, we call it our reinegal duty to record. And our reinegal duty to record is thwarted by Appellee's legal interpretation. But I thought reinegal, the dicta in reinegal was the opposite. Am I completely upside down? I thought the lender doesn't have a duty to record under reinegal. Your Honor, the duty is that of the clerks that I am embracing. For purposes of the initial part of this presentation on the right to a deck action. Right. Our rights under reinegal are being thwarted by Appellee's position. Your affirmative duty. We have an affirmative duty. It is a must duty. We embrace the reinegal duty. Now, once we get to the meaning of 192-007A, which is different than B, B says no marginalia. Their interpretation is, well, A is the same as B. They both mean no marginalia. Respectfully untrue. The other legislative directives that exist in the brief at page 4 of MERS and page 6 of Bank of America are met with several specific obligations to maintain the records, to maintain an index system. And this will answer the other part of your question, Your Honor. Indexation is the key. Appellee's file that is in the language of their brief at 30. Bank of America's brief at page 30 indicates there's a section of the code which is true. It says that when a clerk receives for filing from the filer, from the filer, when the clerk receives from the filer the document to be recorded, the clerk then records it. They file. We record. And when you get to the language of the statutes, Your Honor, that becomes key. The issue of the history, and I did not read the entirety of the statute that I cited for you at the very beginning, it says there's a historical value, a historical value to the documents that are in record, and that includes the property records. This is not about securitization. We seek no enforcement. We seek no damages. We seek only a decision by this court consistent with the Oryx case and in the Sherwin-Williams case that we, on a purely legal issue, can have that declaration. As far as the language of the statute, we again emphasize the language that is at page 30 of Bank of America's brief because it cites a number of legislative directives to our clerks. We embrace the directive of Reinigle, but if you look at the plain language, Your Honors, it uses the word person, and it uses in the manner of. Person under the Code Construction Act must mean all the entities, and in the manner of, Your Honor, and the manner of clearly means not in a private registry by its plain language, but in the office of the county clerk. But the inner manner of connects back to how the original item instruments file. Absolutely. But if the original instrument is an optional filing, how can you? Once it's filed, the index system must be able to keep track of the chain of these transfers that occur, and the legislature has directed that very clearly. Once it is filed, then all filers afterwards must observe the same not only manner of filing, but must file. It is not optional for one than for the other. If your time's up, that's fine. Thank you. Thank you, ma'am. We'll hear next from Ms. Hull. Thank you, Your Honor. May it please the Court. The county's various claims, arguments, and theories rest on two propositions that are irredeemably flawed as a matter of Texas law. First, Dallas County argues that MERS has no interest in real property, but falsely represents that it does. And second, Harris and Brazoria County argue that assignments must be recorded in Texas, even though, as the counties concede, and in response to your question, Judge Higginson, the original deeds of trust need not be. Both propositions fail as a matter of law for the reasons stated by the district court, reasons that have been further confirmed by decisions issued by this court since. They also fail for three additional reasons that require affirmance. First, there is no fraud here for the simple reason that the representation challenged is not false as a matter of law. Dallas County's common law fraud claim and statutory fraudulent lien claim both hinge on the county's theory that MERS does not have an interest in real property. But the deeds of trust themselves could not be clearer. Indeed, they state in bold-faced type, MERS, quote, is the beneficiary under this security instrument. Do you know, does the record contain a statement where instead of beneficiary it says you're the lender? I am not aware of any such statement in the record, certainly not in the deeds of trust. Indeed, what the deeds go on to say is, borrower understands and agrees that MERS holds legal title to the interest granted by the borrower in this security instrument. Borrower, lender, MERS agree to designate them as a beneficiary, and that were the significance if you sort of take a continuum of agent, nominee, beneficiary in the middle, payee, even lender. The vast majority state it's a beneficiary, and it's your position that just corresponds to the Chapter 51 authority to foreclose. Is that right? I think our position is that the plain language of the deeds designates that the borrower, the lender, and MERS, the three parties to the deed, all agree that MERS is the beneficiary under the deed of trust, and it acts in the capacity as nominee for the lender. And again, the language that I just read is that the borrower understands and agrees that that's the arrangement that the parties agree. So this Court in opinions, other courts, have recognized that MERS under the deed can act as a beneficiary. Are decisions, are Morton's and Reith's consistent with that? Yes. Reith's? Yes, I think so. And in fact, Gonzales, which was a 2014 unpublished opinion authored by Judge King, she refers, and I quote, she says, our precedent and the unrebutted summary judgment evidence in that case show that MERS had an interest in the mortgage. And the precedent that she cited in her opinion was Morton. So I think those cases are perfectly consistent. And, of course, Reith's, which was unpublished, Reith's involved a dismissal on 12B6, and then Gonzales basically came in and affirmed that holding. So our position is that both the lien fraud claim and the common law fraud claim fail because there's just no fraud here. There's nothing fraudulent about it. This Court, scores of other courts have recognized it. But second, and alternatively, the challenge representation involves a legal judgment that is not actionable as a fraud. And this Court's case in Boggan, we cited in our brief, states as much. That's 969F3rd at 154. And I think this fact is underscored by the Dallas County clerk, his own testimony, when he says the advice we've gotten from counsel is that MERS does not have an interest in the property. So our primary position is that's not a false statement. As an alternative, regardless of that, it's not a statement. It's not a representation of fact that could give rise to fraud, either a fraudulent lien claim or a common law fraud claim. And third, the challenge representation is an agreed-upon contract term, not a factual statement that can be the basis for either a fraudulent claim of fraud or a fraudulent lien claim. In Texas, parties are free to contract as they please, and their contract defines their rights and responsibilities. The counties conceded below that the borrowers— Are the counties free to index in any manner that they want to come up with any search structure that they've got? The legislature, my understanding of the system, is that the counties have a great deal of discretion with how they index. And the evidence in this case showed that not all of the county plaintiffs index MERS in the same way. The legislature has provided guidance in terms of including grantor and grantee, but the counties themselves have discretion, and there's no dispute in the record that no one, not MERS, not Bank of America, have instructed or influenced that system in any way. And the counties below, they conceded that the borrowers, who are the parties to the deeds of trust, would be, and in their words, stopped from denying MERS status as a beneficiary. That's at 103.92 of the record. And we're aware of no case that has ever held that a contract term, which could not be challenged by a party to the contract, that contract term could nonetheless be the subject of a fraud claim or a fraudulent lien claim by a stranger to the county. Are these MERS records available for anyone to search if they want to look into it? I mean, they go to the county, look for records, but they want to go beyond that. Is there some place they can go and find out who really has the promissory note? As I understand your question, Judge Prado, if the borrower, federal law requires that information to be disclosed to the borrower, and I believe both entities are actually required to affirmatively disclose that information to the borrower. Federal law requires that information to be disclosed. That information is not required to be disclosed under the Texas recording system. And when you think about it, you ask about the purpose of the recording system, is to allow the public, and particularly a subsequent purchaser, to figure out is there a lien on the property? Is there a lien on it? Not loans, but a lien. And so it sort of boggles the mind why the Texas legislature would say we're going to have a system where we're not going to require you to record the lien, the deed of trust, which is what evidence is, the lien, but we are going to require you to record an assignment where the recorded deed gives the borrower, gives the public all the notice that it needs to know that there is a lien on the property. Related to that, just practically, can a title company or just any person out there access the MERS system? If this is a consumer protection concern, they're voicing, and it's just people who want to know who owns the mortgage, or is that a membership-only system? I believe that is a membership-only thing in terms of privacy and whatnot, so I don't believe that information. It's not amenable to study for scholarly purposes or anything like that? No, sir. I believe it's a matter of membership. But, of course, with the county's index, there's a system where the public can get access to the deeds of trust. And what's important, and when title companies and others look, what's important to them is being able to use the index just to be able to find the document and look at the document themselves and make the legal judgment in terms of what the interests are there. You've got probably too little time to answer this, but that Carpenter 1872 decision has spawned confusion here because the words inseparability would favor the county's view. Of course, in Martins, we unpack that differently. Is there a parallel Texas case to our Martins case? That's a good question. I'm not aware of a parallel case to the Martins case. We may have said one. I would have to go look in my briefs. But I agree that this court resolved that issue in Martin, and as Judge Smith noted, I believe, in a footnote in Vanderbilt, this is sort of an interesting area of the law because Texas courts actually tend to follow federal law because so many of these cases end up in federal law. In nine seconds, do you know of any state that requires mandatorily filing of assignments? Is any state responsive to sort of county clerk pressure like the one being pursued here in court? Do you know of any state where they've enacted legislation? I'm not aware. I'm not aware of any state. My co-counsel may have an answer to that, but certainly Texas has not done so. Thank you. Thank you. Mr. Carverson. May it please the Court. I represent Bank of America. I'm going to address the Chapter 192 issue, but before I do that, I wanted to address two questions that were just posed. The first question is, do borrowers have the access to the MERS records as to who owns their note? And the answer to that question is yes. Electronically, obviously, there's privacy issues there, so that MERS is sure that the right person is inquiring. But yes, a borrower can. Title companies and others cannot. Second question, is there any state by statute that has clearly required recordation of assignments? The only clear statute that requires recordation of assignments, and it's only in certain instances, would be Kentucky. There are statutes in some states, Minnesota is one, that say in order to foreclose you have to record certain assignments. You don't have to do them ahead of time, but to foreclose you may have to. And the Minnesota case actually is referred to in the briefs. But as far as a freestanding requirement, Kentucky is the only one. Was that recent legislation? 2006. Interesting. And elsewhere it's being pursued, perhaps, or not? There's still litigation going on like this, as Your Honor will see in the briefs, and there's cases going on. Pennsylvania is an example where the contention is being made, but as far as a clear statute, that's the only place. And we are even arguing about the extent to which that's required. With respect to Chapter 192, as Your Honors know, there's two issues. Okay? There's the substantive issue Ms. Radnovsky referred to and argued, and the second is the procedural question. On the procedural question, I would just make one observation, unless the Court has other questions, and that is this case is just like the Supreme Court case of Schilling v. Rogers, which we cite and which Judge O'Connor cited. In Schilling v. Rogers, the Supreme Court was faced with a claim of a German national who had requested under a federal statute that he obtain back money that had been seized from him during World War II. He sued under that statute as well as for declaratory judgment. The Supreme Court found there was no right of action under that federal statute to get the money back from the federal government. It then said since there's no right of action under the federal statute, there is no declaratory judgment right under the statute, under federal law 2201. This is just like that case. Judge O'Connor below found there is no right of action for the counties to sue directly for an alleged violation of Chapter 192.007. That's not challenged. That was his oral ruling at the beginning of the case. That's not challenged. Nobody's contending that somehow they should have the right to sue directly under 192.007. In light of that, as day follows night, Schilling is right on point and says since there is no right of action under the underlying statute, there can be no right under 2201. Does anyone have a right of action under that statute? Under 192.007? No. There's no, as Judge O'Connor found, there was no one. The counties did not have a right. There's no express statement of a grant of a right. He, of course, didn't deal with whether there were perhaps others such as a borrower. Obviously, there's some borrower cases that cite Chapter 192.007. But we know of no authority that would suggest that there is a right for anyone to sue under that statute. So that's the procedural issue which we contend is dispositive of the case, as Judge O'Connor found. How would the county know if there's something improper in something that's filed? I mean, do they look these over and inspect them and check them out before they're filed? On procedures, the county looks at the documents. If they're regular on their face, then they need to be recorded. And that's under the state law as well as an attorney general opinion. They have available to them the two procedures if they have a question. One is they can go to the district attorney if they have a concern that this may be a fraudulent document. Secondly, and that's under Government Code 51.901. Second, they can at any time, the attorney general certainly can weigh in as to a matter of state law to provide guidance. And in fact, I just referred a minute ago to an attorney general opinion as to what a clerk's duties are. Again, that's an attorney general providing guidance as to the extent of a state law. The Texas legislature, though, has not provided that the county has a general right to sue if it has a concern or a question about how to administer the laws provided to it. And as a consequence, what they are left with is the advice that they can receive from their counsel or seeking some kind of input from the attorney general. In this instance, as this court has found on four separate occasions, the statute does not provide an obligation to record an assignment of a deed of trust. In fact, in this instance, there are not even assignments to record. But as this court has held, this statute is administrative in nature. It really tells you what, if there is a desire to show the record that something is released or assigned, then in order to do that, you need to provide a document that's to be recorded in the same manner as the instrument to which it previously refers, and there cannot be any marginalia. The adjustment you heard today, I thought, in oral argument, is that it may be perhaps stepping back from the notion that person equates to lender must file. Instead, it's a frustration of your procedural obligation of the clerk to file itself. So citing Reinigle may be consistent with the dicta against the lender's duty, but their own duty has been frustrated. Well, the county's duty, just to be clear, is to take what it gets and then to record it, assuming that it's regular on its face. They don't have a duty with respect to documents that are not tendered to them. They don't have a duty to go knock on people's doors looking for documents that maybe might be recorded. It's a permissive system. That's how it's set up. That's how it's set up in basically every state. And so the county has a very important function, and we don't dispute, as Ms. Rudnovsky said, that records are important, but the records that they are given are important. The statute does not create an obligation on the part of the lender to give them additional documents, such as in this instance an assignment. And the discussion of Judge O'Connor, which actually rested heavily on the Green case, which Your Honors then subsequently affirmed, I think is very apt. The language of the statute is, we think, is referring to what to do with respect to an instrument. You have to record in the same manner, and you're not allowed to use marginalia. The context is tremendously important, again, as Judge O'Connor indicated. This is a statute that appears in the local government code. The property code is where you put obligations to record and the effect of those. Local government code is where the legislature puts duties and responsibilities of counties. A person refers just to the county official? Well, it's another. No, it's another. I don't have any problem with the assertion that a person is referring to somebody tendering the document. But it's just another way of saying that the flip side would be, you could say, a clerk may not record unless, and so instead it says, a person must record in the same manner. It's just a flip way of making the same point, which is basically in order to make the record system work, that subsequent document needs to be recorded in the same manner. But again, this is in the local government code. It doesn't look like a recording requirement. It doesn't say who must record. Does it need to be the assignee or the assignor or maybe even the borrower? It doesn't say when they must record. Can it be 10 days, 30 days, two years later, or tied to some event? It doesn't say what happens if you don't. It doesn't make a lot of sense to make it a mandatory requirement. And I'll give you an example.  If I pay off my mortgage, obviously I want to get a release of my mortgage. Or if I file bankruptcy, my mortgage in certain circumstances, Chapter 7 bankruptcy, my mortgage has a certain effect. It's been affected in some respect by the bankruptcy. But the statute as they read it suggests basically nothing happens to the mortgage unless somebody actually goes and files something. And that's not an accurate statement of the way the law works. This is a recording requirement, a recording rule, but it doesn't have the substantive effect that they indicate. And finally, the most important thing, at least I would suggest the most important thing to think about, is the legislative history. This is a statute, all of 192.007 AMB, which was enacted in 1971. We talk about this in our papers. It was enacted in order to aid microfilming. It was part of that section. That section, that statute, by the way, did nothing else but aid microfilming. And, of course, microfilming has to be aided by making sure that you don't use marginal notations. And instead, so that you can microfilm the original deed of trust, you need to have that second document to be recorded in the same manner and not released or assigned or whatever. The old practice was successive events relating to an instrument were just written into the margins? Sometimes. That was one of the options as to how you would do it. And, in fact, some states still have that. You still can actually go down Kentucky as an example. You can still go down to the clerk's office and literally, right on the side, this has been released or partially released, or this has been rolled into another obligation, those kinds of things. So in 1971, because people were literally running out of space, they passed this statute. And this statute has been that way ever since. The thought that this somehow is something. Just with your little time left, can I ask, a few state supreme courts have ruled contrary to you on unjust enrichment claims. There have been several circuit courts, federal, that have also addressed versions. Would that entire body of law be not so helpful to this case because it all turns on state law? Certainly matters turn on state law. The principles on unjust enrichment, though, are generally true. Obviously, particular states are somewhat different. But, for example, the 6th, 7th, and 8th circuits all have found that this kind of claim is not unjust enrichment. And they have largely turned on the principle that there is nothing unjust about not recording. If you don't have to record, there's nothing unjust about it. To the extent that you get a benefit, that is, an assignee gets to say, hey, I'm in first position. To the extent you get that benefit, it's not unjust for you to retain that benefit because it's the state. Mr. Heffernan, I think you've answered the question. Sure. Your time has expired. Thank you, Judge Dennis. Is there no further questions? No. I appreciate the Court's time. Not for me, I'm sorry. We'll go back to Ms. Nicholas. You have three minutes for rebuttal. Thank you, Your Honor. First of all, I'd like to address the Court's question. Is there any document identifying MERS as the lender? In the record on page 2348, it has lender mortgage electronic systems. In the record on page 2349, it has payee mortgage electronic systems. In the record on page 2350, it has legal and equitable owner, holder of one certain promissory note. These documents are attached to Dallas County's complaint. These records, these documents assert interest in property that MERS does not possess. Additionally, I would like to address the argument made that Bank of America, that the Texas Legislature does not give the county the right to sue. Chapter 12 specifically does that. It recognizes the right of the attorney general, of a municipal attorney, the criminal district attorney, and the district attorney to bring an action for injunctive relief and damages under Chapter 12. This is a declaratory relief. Is that covered? The declaratory relief, Your Honor, action is as to, I believe, 193. That is being argued by my co-appellant. You don't want to address her issue one way or another? You don't want to take sides on that one? Additionally, Your Honor, in regard to the argument of MERS that the parties agreed that MERS is a beneficiary, the parties can agree in contract as to whatever they want. We're not contesting that. When you file that document, however, and you claim an interest you do not possess in the property records, knowing that this is the recording statute, the recording statute does require that the county clerk record the grantor and the grantee. But the injury isn't a monetary one to you. The injury is this notion of corrupted documents? It's corrupted documents. And under Chapter 12, it's not just a fraudulent lien. Chapter 12 talks about fraudulent lien, a fraudulent interest. Our court in Reese has accepted their legal status as having a beneficial interest to suffice for mortgage foreclosures. It's harder to harmonize with the notion that they're the lender, but it would seem to encompass all the filings that say they're a beneficiary. But, Your Honor, the Chapter 51 beneficiary, most of these cases stem out of Chapter 51. Chapter 51, all Chapter 51 recognizes is an agency. Chapter 51 is mortgagee by book electronic system is a nominee of the beneficiary. It's not the beneficiary. When MERS says I'm the lender, when MERS says I'm the equitable and legal holder of the note, when MERS says that I'm the payee, this is not MERS acting as an agent. MERS is saying I possess these things. It's not saying this third party possesses these matters. Thank you, Your Honor. Thank you, ma'am. Ms. Ratnovska? You have two minutes, Your Honor. Ms. Rosenberg? We counties are not private citizens, aliens trying to recover property under the Trading with the Enemy Act. Every case cited by Appelese involves entities, individuals attempting to interfere with a statutory right or an agency right. Schilling could not do so because the exclusive remedy lay within the Trading with the Enemy Act. Same true of the TMAV Aetna case. The doctors were attempting to invade the province, the exclusive enforcement province of the TDI, Texas Department of Insurance. What we are is an entity, a unit of government with direct legislative directives. At page 30 of their brief, they have three bullet points. The last two, the clerk shall give the person after the clerk who gives the person who files the instrument a receipt. They are as follows. The clerk must not transfer or dispose of documents but to keep them essentially forever. We cannot access the documents in the private registry of MERS. We can't even access the numbers should there be an attempt to make an historical analysis comparing the numbers that are filed within our county clerks and the ones that are missing within the chain of title that we would like to preserve historically. And it's not a pleasant matter. It's not that we would like to. We are directed. We are commanded. Yes, they are procedural commands. They are very important. They carry no enforcement. But we trust these people. We have settled with them. They've stated publicly they will observe the law. They say that MERS does comply with the law in all 50 states and they are good for it and we believe they will. As far as the specifics of whether or not we should make the records available to everyone to use and copy without restriction, that is their bullet point on page 30 and they cite the statute for which it's responsible. As far as the questions about other legislative directives, I would point the court to the Record on Appeal 12769-70, which says that our clerks who are records officers shall identify and take adequate steps to preserve records that are of permanent value. Thank you, Ms. Rogofsky.